**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
402 W. Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 798-2006

**Counsel for Plaintiffs**

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA BORQUEZ, TRISH FALCON, RANDI GARDNER, and ALICIA HINESTROSA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLLY PUBLIC BENEFIT CORPORATION,<br><br>Defendant. | Case No. '26CV4524 JO AHG<br>Pleading Type: Class Action<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**THE UNFAIR COMPETITION LAW, THE FALSE ADVERTISING LAW, AND THE CONSUMER LEGAL REMEDIES ACT**<br><br>**No Jury Demand** |

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ........ 1
II. PARTIES ........ 1
III. SUMMARY OF CLAIMS ........ 2
IV. REGULATORY BACKGROUND ........ 3
V. THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC. ........ 3
VI. MELATONIN, THE PRIMARY ACTIVE INGREDIENT IN KIDS SLEEP, IS NOT SAFE FOR CHILDREN ........ 4
VII. KIDS SLEEP'S SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DRUG CLAIMS. ........ 9
VIII. KIDS SLEEP IS AN UNAPPROVED NEW DRUG. ........ 12
IX. DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW. ........ 14
X. DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ........ 14
XI. PLAINTIFFS' PURCHASES OF KIDS SLEEP ........ 16
XII. RELIANCE AND INJURY ........ 17
XIII. CLASS ACTION ALLEGATIONS ........ 17
CAUSES OF ACTION ........ 20
PRAYER FOR RELIEF ........ 28
NO JURY DEMAND ........ 29

Plaintiffs Christina Borquez, Trish Falcon, Randi Gardner, and Alicia Hinestrosa, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Olly Public Benefit Corporation ("Olly" or "Defendant") and upon information and belief and investigation of counsel, allege as follows:

## I. JURISDICTION AND VENUE

1. The Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the state of which Defendant resides.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because hundreds or thousands of class members reside in this District and suffered injuries as a result of Defendant's conduct in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II. PARTIES

3. Defendant Olly Public Benefit Corporation is a Delaware corporation with its principal place of business in San Francisco, California.

4. During the class period, Olly manufactured, marketed, and sold Olly Kids Sleep ("Kids Sleep"). Defendant marketed Kids Sleep with illegal drug claims that deceptively promised prescription sleep disorder drug effects. In truth, the product was not safe for children.

5. Plaintiff Christina Borquez is a citizen and resident of California who purchased Kids Sleep during the class period for household consumption.

6. Plaintiff Trish Falcon is a citizen and resident of California who purchased

Kids Sleep during the class period for household consumption.

7. Plaintiff Randi Gardner is a citizen and resident of Arizona who purchased Kids Sleep during the class period for household consumption.

8. Plaintiff Alicia Hinestrosa is a citizen and resident of Wisconsin who purchased Kids Sleep during the class period for household consumption.

## III. <u>SUMMARY OF CLAIMS</u>

9. During the class period, Olly marketed, distributed, and sold Kids Sleep. Defendant claims that Kids Sleep is a "gentle supporter of sleep" that "delivers a kid-friendly amount of melatonin to support healthy sleep cycles and help little one's rest" and "promote[s] peaceful slumber."




10. These claims were misleading, as melatonin, the primary active ingredient in Kids Sleep, is unsafe for children.

11. Defendant's representations mislead consumers into believing that Kids Sleep is safe and effective for its intended purposes.

12. Plaintiffs purchased Kids Sleep (1) in reliance on Defendant's deceptive safety and efficacy claims and (2) with the belief that the product was safe, (3) was effective, and (4) was sold in compliance with state and federal regulations.

13. Plaintiffs' children consumed Kids Sleep as directed, but the product was not satisfactory because it was an unlawful new drug, with an unlawful label, and because it was not safe for children.

14. This action is brought to remedy Defendant's fraudulent, unfair, and unlawful conduct. On behalf of the Class defined herein, Plaintiffs seek an order compelling Olly to, *inter alia*: (1) cease marketing and selling Kids Sleep as an illegal unapproved new drug; (2) conduct a corrective advertising campaign; (3) destroy all unlawful products and labeling; (4) award Plaintiffs and the Class members restitution and damages; and (5) pay costs, expenses, and attorneys' fees.

## IV. REGULATORY BACKGROUND

15. "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

16. A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1).

17. Pursuant to 21 U.S.C. § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA.

18. Further, 21 U.S.C. § 331(a) prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

19. Under 21 U.S.C. § 352(f), drugs are required to have adequate instructions for safe use.

## V. THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC.

20. "Unapproved prescription drugs pose significant risks to patients because they

have not been reviewed by FDA for safety, effectiveness or quality."[1]

21. "Without FDA review, there is no way to know if these drugs are safe and effective for their intended use, whether they are manufactured in a way that ensures consistent drug quality or whether their label is complete and accurate." *Id.*

22. "Unapproved drugs have resulted in patient harm, and the [FDA] works to protect patients from the risks posed by these drugs." *Id.*

23. Unapproved drugs lack "labels and prescribing information that has" "been reviewed by FDA for accuracy and completeness."[2]

24. Consumers using unapproved drugs run the risk of "unexpected and undocumented safety concerns due to lack of rigorous pre- and postmarket safety surveillance." *Id.*

25. Additionally, unapproved drugs lead consumers in need of medical treatment to forgo medically proven therapies.

## VI. MELATONIN, THE PRIMARY ACTIVE INGREDIENT IN KIDS SLEEP, IS NOT SAFE FOR CHILDREN

26. On the packaging of Kids Sleep, Olly claims that the product is a "mild blend" and "gentle supporter of sleep" that "works with little bodies to promote peaceful slumber." Olly further claims Kids Sleep is for "ages 4 and up."

27. On its website, Olly claims that "Kids Sleep delivers a kid-friendly amount of Melatonin to support healthy sleep cycles and help little ones rest."[3]

28. These claims are misleading, as melatonin supplements are not safe for children.

---

[1] U.S. Food & Drug Admin., Unapproved Drugs (June 2, 2021), available at www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs.

[2] U.S. Food & Drug Admin., Unapproved Drugs and Patient Harm (June 2, 2021), www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

[3] Olly Public Benefit Corporation, Kids Sleep, available at www.olly.com/products/kids-sleep (last visited July 30, 2026).

29. The "use of melatonin supplements as a sleep aid for children is becoming more common. The number of children taking melatonin at least once a month has risen nearly 20-fold since 2018. From 2012 to 2021, calls to poison control centers reporting melatonin ingestion in children rose 530%, and sales of the supplement have doubled since 2017."[4]

30. The "recent uptick in use has started to concern doctors, who worry that adults and children may be taking unnecessary amounts of the supplement rather than addressing sleep problems with healthier habits." *Id.*

31. "Melatonin is not recommended for children under 5." *Id.*

32. "The long-term effects of taking melatonin are not well understood . . . There are not a lot of major studies. If children use melatonin for too long, they may develop a tolerance to it, leading to higher and higher doses needed to be effective." *Id.*

33. "Taking too much melatonin can have adverse effects . . . Exceeding the dosage recommended by a doctor can lead to daytime grogginess, while more severe effects include diarrhea, vomiting, confusion, short-term depression, and an increased risk of seizures." *Id.*

34. There "have been many reports of melatonin overdoses in children."[5]

35. The "American Academy of Sleep Medicine (AASM) recently issued a health advisory with warnings about" melatonin use, noting that "the amount of actual melatonin in tablets or liquid can vary, from less than what the label says to much more. The greatest variation is found in the chewable tablets, which are unfortunately the ones children are most likely to take. It's also hard — impossible, even — to know what else might be in the supplement. The AASM reports that some melatonin products also contain serotonin, a hormone and neurotransmitter that requires a prescription." *Id.*

---

[4] Tufts U. School of Medicine. *Is Melatonin Safe for Kids?* (March 11, 2024), available at https://medicine.tufts.edu/news-events/news/melatonin-safe-kids.

[5] Claire McCarty, MD. *New advice on the use of melatonin in children*. Harvard University School of Public Health (October 6, 2022).

36. Children "don't need [melatonin] to get a good night's sleep." *Id.*

37. From "2012-2021, there were more than 260,000 child poisoning reports involving melatonin . . . [S]ome children needed hospital care and two children died."[6]

38. There are "concerns about how [melatonin] might affect a child's growth and development, particularly during puberty. Studies have also found that morning sleepiness, drowsiness, and possible increased urination at night are the most common side effects that occur while taking melatonin. Further, melatonin may interact with other medicines a child takes." *Id.*

39. "There have been deaths reported in young children in the US after taking off-label melatonin supplements. Since 2015, seven deaths of infants and toddlers, aged 2 months to 3 years, were investigated in North Carolina, USA. Melatonin levels in these children's post-mortem whole blood ranged from 3 to 1,400 ng/mL, far exceeding the endogenous concentrations."[7]

40. Between "2012 and 2021 there was a 530% rise in calls to US Poison Control Centers for pediatric melatonin ingestions. This resulted in 27,795 emergency department and clinic visits, 4,097 hospitalizations, 287 intensive care unit admissions and 2 deaths." *Id.*

41. "[N]early 20% of the poison-control calls reported some symptoms, which included gastrointestinal distress, cardiovascular symptoms, and more. Melatonin has not been well-studied in children, even though about 10% of U.S. parents have at least one child who takes it, according to *Consumer Reports*."[8]

---

[6] Anna Esparham, MD, *Melatonin for Kids: What Parents Should Know About This Sleep Aid***.** American Academy of Pediatrics (April 27, 2023), available at www.healthychildren.org/English/healthy-living/sleep/Pages/melatonin-and-childrens-sleep.aspx

[7] Kim CY, Yousef P, Gilad R, Shapiro CM. *The Use and Misuse of Over-the-Counter Melatonin in Children and Adolescents: A Commentary*. Can J Psychiatry. 2025 May.

[8] Weis, H. *Some Melatonin Supplements Have Dramatically Different Dosages Than Advertised, New Study Says*. Time (April 25, 2023).

42. Since

> melatonin is a hormone made in the brain, released to make us feel tired when it gets dark outside, companies will often highlight in their marketing that the top-off provided by a melatonin supplement is "natural." But many of their actual doses far exceed what the body makes on its own, says Cohen. "What we know is that if you give a 20-year-old adult a very small amount of melatonin in the morning—like a 10th of a milligram, or three 10ths of a milligram—it raises their levels up to the normal nighttime levels," says Cohen. Popular over-the-counter supplements often claim to contain as much as five or even 10 milligrams per dose. Considering the unpredictable dosages found in Cohen's study, a nighttime melatonin routine could add many times what the body is able to produce.

*Id.*

43. "The great majority of melatonin gummy products were inaccurately labeled, with most products exceeding the declared amount of melatonin."[9]

44. In a recent study examining the accuracy of labeling of melatonin products, "the actual quantity of melatonin ranged from 74% to 347% of the labeled quantity. Twenty-two of 25 products (88%) were inaccurately labeled, and only 3 products (12%) contained a quantity of melatonin that was within ±10% of the declared quantity." *Id.*

45. "A Canadian study had similar results: analysis of 16 Canadian melatonin brands found that the actual dose of melatonin ranged from 17% to 478% of the declared quantity." *Id.*

46. "Administration of as little as 0.1 mg to 0.3 mg of melatonin to young adults can increase plasma concentrations into the normal nighttime range. **Consuming melatonin gummies as directed could expose children to between 40 and 130 times higher quantities of melatonin**." *Id.* (emphasis added).

47. "Unintentional ingestions could lead to consumption that greatly exceeds these dosages of melatonin." *Id.*

---

[9] Cohen PA, Avula B, Wang Y, Katragunta K, Khan I. *Quantity of Melatonin and CBD in Melatonin Gummies Sold in the US*. JOURNAL OF THE AMERICAN MEDICAL ASSOCAITION. 2023;329(16):1401–1402.

48. "Given these findings, clinicians should advise parents that pediatric use of melatonin gummies may result in ingestion of unpredictable quantities of melatonin." *Id.*

49. The Mayo Clinic likewise notes that it is "unclear whether melatonin supplements are safe for children."[10]

50. "When sleep issues are a long-term problem for children, evaluating sleep habits and the environment can identify the causes of those issues. Many sleep-related disturbances in children can be addressed with a consistent nighttime and sleep routine." *Id.*

51. "In gummy form, melatonin supplements can be enticing for children, leading to a risk of overconsumption. Taking a large dose of melatonin can cause gastrointestinal issues or irritability. A large dose also can keep your child's body from naturally producing melatonin to make them sleepy." *Id.*

52. The concern stated here is for American adults, who average 170lbs, taking "0.1 mg to 0.3 mg" of melatonin. Olly's dosage for small children weighing as little as 20lbs is to take one or two 0.5mg gummies. This is absolutely reckless advice and amounts to giving a small developing brains mega-doses of a hormone. There are no studies of the effects of giving small children such amounts over an extended period, but strong concerns that it is unsafe to do so.

53. A 2023 review article determined that

> Children who use melatonin are likely to experience non-serious adverse events, yet the actual extent to which melatonin leads to non-serious adverse events and the long-term consequences remain uncertain. This major gap of knowledge on safety calls for caution against complacent use of melatonin in children and adolescents with chronic insomnia and for more research to inform clinicians and

---

[10] Mayo Clinic, *Melatonin use in children: Is a sleep aid supplement safe?* (March 21, 2024), available at www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/melatonin-use-in-children.

guideline panels on this key issue.[11]

54. Another recent review article noted that

> Melatonin is the leading cause of unsupervised medication exposure and overdose in emergency departments for young children (aged 0-6 years). Existing literature has documented the benefits of melatonin in older children (aged 7-18 years) with neurologic conditions but has yet to examine young children.[12]

55. The study's "findings suggest a global rise in prescriptions without efficacy data on use in children with typical development, underscoring the need to identify strategies to prevent and reduce melatonin use in young children, as well as to improve adherence by pediatricians to evidence-based practice standards." *Id.*

56. Olly's representations that Kids Sleep is a "mild blend" and a "gentle supporter of sleep that works with little bodies," and that it "delivers a kid-friendly amount of Melatonin to support healthy sleep cycles and help little ones rest," are separately misleading because melatonin supplements are not safe for children and do not "support healthy sleep cycles."

57. Rather, doctors recommend evaluating sleep habits and advise against medication, noting that "[m]any sleep-related disturbances in children can be addressed with a consistent nighttime and sleep routine."[13]

## VII. KIDS SLEEP'S SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DRUG CLAIMS.

### A. Kids Sleep's Packaging

58. During the class period, Olly marketed Kids Sleep with deceptive efficacy

---

[11] Händel MN, et al. *The short-term and long-term adverse effects of melatonin treatment in children and adolescents: a systematic review and GRADE assessment*. EClinicalMedicine. 2023 Jul 6;61:102083.

[12] Kracht CL, et al. *Melatonin Use in Young Children: A Systematic Review*. JAMA Netw Open. 2026 Jan 2.

[13] Mayo Clinic, *Melatonin use in children: Is a sleep aid supplement safe?* (March 21, 2024), available at www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/melatonin-use-in-children.

claims that suggest that the product can affect the structure or function of the human body by treating insomnia and sleeplessness and by promoting healthy sleep cycles.

59. These claims are misleading, as none of the ingredients in Kids Sleep, either individually or in combination, safely and effectively treats insomnia or sleeplessness in children.

60. These claims also render Kids Sleep a "drug" within the meaning of 21 U.S.C. § 321(g).

61. Olly failed to obtain FDA approval to market and distribute Kids Sleep in violation of 21 U.S.C. § 355 and Health & Safety Code § 111550.

62. The packaging of Kids Sleep is pictured below.






63. During the Class Period, the "Kids Sleep" label claimed that the product is a "gentle supporter of sleep" that "works with little bodies to promote peaceful slumber" and "is just the right thing for those occasional restless nights." Defendant further claims that the product is "for occasional sleeplessness" and "for occasional sleep support."

64. Kids Sleep does not deliver the advertised benefits because it is not a safe and effective treatment for insomnia or sleeplessness in children.

65. These safety and efficacy claims, in addition to being misleading, render Kids Sleep a "drug" as defined by 21 U.S.C. § 321(g).

**B. Olly's Web and Amazon Pages for Kids Sleep**

66. Olly advertises Kids Sleep with further deceptive efficacy claims online that suggest the product can provide prescription sleep disorder drug benefits.

67. The Kids Sleep label, Defendant's website, olly.com, and the Kids Sleep Amazon page, which Olly controls, contained the following claims, which show that the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease, during the Class Period:

- "Kids Sleep"
- "For occasional sleeplessness"
- "When bedtime needs a boost"
- "works well with little bodies to promote peaceful slumber"
- "This mild blend is just the thing for those occasional restless nights."
- "Sleep gummy"
- "OLLY Kids Sleep delivers a kid-friendly amount of Melatonin to support healthy sleep cycles and help little ones rest"
- "EASY AS 1, 2, ZZZ's: When kids need a little bit of sleep support to catch some ZZZ's reach for OLLY Sleep"
- "Sleep is on the way"
- "Helps you fall asleep and stay asleep"
- "helps little ones maintain healthy sleep cycles"

68. These claims suggest Kids Sleep can treat insomnia and sleeplessness in children and affect the structure and function of the human body by improving sleep and promoting healthy sleep cycles.

69. Further, these claims render Kids Sleep a "drug" within the meaning of 21 U.S.C. § 321(g)(1).

70. True and correct copies of screenshots of the Kids Sleep page from Defendant's website, olly.com, are attached hereto as **Exhibit 1.**

71. True and correct copies of screenshots of the Amazon page for Kids Sleep, which Olly controls, are attached hereto as **Exhibit 2**.

72. Olly failed to obtain FDA approval prior to marketing, distributing, and selling Kids Sleep.

## VIII. KIDS SLEEP IS AN UNAPPROVED NEW DRUG.

73. "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or

other animals." 21 U.S.C. § 321(g)(1).

74. Kids Sleep is a "drug" because it is advertised as a product which will affect the structure or function of the body and cure, mitigate, treat, or prevent disease.

75. The claims on the packaging of Kids Sleep, Olly's website, and Olly's Amazon page for Kids Sleep render the product an unapproved new drug.

76. The FDA has determined that the following claims, which are similar to those Defendant made regarding Kids Sleep, constitute "drug claims":

- "is used for insomnia, sleep apnea" (**Exhibit 3**, FDA Warning Letter to SANA Group, LLC);
- "most commonly used for sleep disorders, especially the inability to sleep (insomnia)" (**Exhibit 3**);
- "Maintain and aid healthy sleep cycles" (**Exhibit 4**, FDA Warning Letter to MB Solutions, LLC/BioSpectrum CBD).

77. A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1). Here, Kids Sleep is a "new drug" within the meaning of the FDCA because it is not generally recognized as safe and effective for the intended uses. See Title 21 of the Code of Federal Regulations, Chapter I, Subchapter D; 21 C.F.R. § 330.1.

78. Defendant has not received approval from the FDA to sell Kids Sleep.

79. The sale of unapproved new drugs is illegal and dangerous. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition. The FDA's regulatory regime helps ensure that such products are kept away from consumers.

80. Defendant's failure to comply with these regulations puts consumers at risk and gives Olly an unfair advantage over competitors that do commit the time and expense

of complying with such necessary regulations.

81. Kids Sleep does not qualify for the reduced level of regulation applicable to certain nutritional supplement products for several reasons. The Kids Sleep label, Olly's website, and Olly's marketing materials neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans, characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describe general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

82. California similarly prohibits the sale of unapproved new drugs. Health & Safety Code § 111550.

## IX. DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW.

83. Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because Olly's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

84. In particular, while Defendant's marketing of Kids Sleep with deceptive safety, efficacy, and "drug" claims as defined by 21 U.S.C. § 321(g) and absent FDA approval to do so allowed Olly to realize higher profit margins than if it did not use unlawful marketing tactics, this utility is small and far outweighed by the gravity of the economic harm and potential physical harm that Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury that consumers themselves could reasonably have avoided.

## X. DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

85. Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because the marketing, sale, and distribution of

Kids Sleep violate California's Sherman Food, Drug, and Cosmetic Law, including federal provisions that have been adopted by California:

- **Health & Safety Code § 110110**, which adopts all FDA regulations relating to new drugs and premarket approval;
- **Health & Safety Code § 110111**, which adopts all FDA nonprescription drug regulations;
- **Health & Safety Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";
- **Health & Safety Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";
- **Health & Safety Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";
- **Health & Safety Code § 111445**, "It is unlawful for any person to misbrand any drug or device.";
- **Health & Safety Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";
- **Health & Safety Code § 111550**, prohibiting sale of new drugs unless approved under 21 U.S.C. § 355;
- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";
- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";
- **21 U.S.C. § 352(f)(1)**, requiring drugs to have adequate directions for use;
- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs.

86. The fraudulent marketing and advertising of Kids Sleep also violates the CLRA and False Advertising Law and further constitutes a violation of the FDCA and the Sherman Law and, as such, violates the "unlawful" prong of the UCL.

87. Defendant's unlawful acts allowed it to sell more units of Kids Sleep than it

would have otherwise, and at a higher price and higher margin.

88. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and requiring Defendant to commence a corrective advertising campaign.

89. Plaintiffs also seek an order for the disgorgement and restitution of all revenue received by Defendant from the sale of Kids Sleep and have no adequate remedy at law.

## XI. PLAINTIFFS' PURCHASES OF KIDS SLEEP

90. Plaintiff Christina Borquez repeatedly purchased Kids Sleep for household use primarily from CVS, Walmart, and Target locations in the San Jose area. Her first purchase occurred in approximately 2021, and her most recent purchase occurred in late 2025.

91. Plaintiff Trish Falcon repeatedly purchased Kids Sleep for household use primarily from Target locations in the Anaheim area. Her first purchase occurred in approximately 2024, and her most recent purchase occurred in 2026. She purchased the product approximately once every four to six months during this period.

92. Plaintiff Randi Gardner repeatedly purchased Kids Sleep for household use primarily from Walmart locations in the Tucson, Arizona area and from Amazon. Her first purchase occurred in early 2026, and her most recent purchase occurred in June 2026. She purchased Kids Sleep approximately three times during this period.

93. Plaintiff Alicia Hinestrosa repeatedly purchased Kids Sleep for household use primarily from Walmart locations in the Racine, Wisconsin area. Her first purchase occurred in early 2025, and her most recent purchase occurred in late 2025. She purchased Kids Sleep twice.

94. In deciding to purchase Kids Sleep, Plaintiffs relied on Defendant's deceptive safety and efficacy representations and fraudulent omissions.

95. Plaintiffs used Kids Sleep as directed, but the product failed to deliver the advertised benefits.

96. Because Plaintiffs expected these statements to be true and honest, but they were not, they did not receive the benefit of their purchases.

## XII. RELIANCE AND INJURY

97. Plaintiffs purchased and used Kids Sleep in reliance on Defendant's deceptive safety and efficacy representations described herein and would not have purchased the product absent Defendant's deceptive advertising.

98. When Plaintiffs purchased Kids Sleep, they were seeking a safe and effective product that would treat insomnia and sleeplessness in children and promote healthy sleep cycles in children.

99. Plaintiffs purchased Kids Sleep with the natural assumption that products sold in stores and online by large companies would be safe, would deliver the advertised benefits, and would be sold in compliance with applicable state and federal law.

100. Plaintiffs suffered economic injury when they purchased Kids Sleep because the product was not safe and effective for its intended purposes and was in violation of federal regulations and California law.

101. Plaintiffs would not have purchased Kids Sleep had they known that it was not safe and effective for its intended purposes and was sold in violation of federal regulations and California law.

102. Kids Sleep was offered for sale in violation of California and federal law and had a value of $0 because it is illegal and unsafe.

103. Plaintiffs would consider purchasing Kids Sleep in the future if they could be assured that the product (1) would deliver the advertised benefits, (2) was safe and effective, and (3) was sold in compliance with all FDA regulations and California law.

## XIII. CLASS ACTION ALLEGATIONS

104. Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees and the Court, its officers, and their families. The Class is defined as:

All citizens and residents of the United States who purchased Kids Sleep in the

United States for their own personal or household use, and not for resale, from January 1, 2019 to the present.

105. The California Subclass is defined as:

All residents and citizens of California who purchased Kids Sleep in California for their own personal or household use, and not for resale, from January 1, 2019 to the present.

106. The Arizona Subclass is defined as:

All residents and citizens of Arizona who purchased Kids Sleep in Arizona for their own personal or household use, and not for resale, from January 1, 2019 to the present.

107. The Wisconsin Subclass is defined as:

All residents and citizens of Wisconsin who purchased Kids Sleep in Wisconsin for their own personal or household use, and not for resale, from January 1, 2019 to the present.

108. Questions of law and fact common to Plaintiffs, the Class, and the Subclasses include:

a. Whether Defendant's conduct constituted a violation of the unfair prong of California's Unfair Competition Law;

b. Whether Defendant's conduct constituted a violation of the unlawful prong of California's Unfair Competition Law;

c. Whether Defendant's conduct constituted a violation of the fraudulent prong of California's Unfair Competition Law;

d. Whether Olly communicated safety and efficacy messages through Kids Sleep's labeling, packaging, and website;

e. Whether those messages were material, or likely to be material, to a reasonable consumer;

f. Whether those messages were false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

g. Whether Olly fraudulently omitted material information in advertising Kids Sleep as safe and effective;

h. Whether Olly sold and distributed Kids Sleep to the public in misleading packaging that was likely to deceive the public;

i. Whether Kids Sleep is an unapproved new drug;

j. Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

k. Whether the slight utility Defendant realized as a result of its conduct outweighs the gravity of the harm the conduct caused to its victims;

l. Whether Defendant's conduct violated public policy as declared by specific constitutional, statutory, or regulatory provisions;

m. Whether the injury to consumers from Defendant's practices is substantial;

n. Whether the injury to consumers from Defendant's practices is outweighed by benefits to consumers or competition;

o. Whether Class members are entitled to restitution;

p. Whether Class members are entitled to damages and/or punitive damages;

q. Whether Class members are entitled to an injunction and, if so, its terms; and

r. Whether Class members are entitled to any further relief.

109. By purchasing Kids Sleep, all Class members were subjected to the same wrongful conduct.

110. Plaintiffs' claims are typical of the Class's claims because all Class members were subjected to the same economic harm when they purchased Kids Sleep and suffered economic injury.

111. Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

112. The Class is sufficiently numerous, as it includes thousands of individuals who purchased Kids Sleep during the Class Period.

113. Class representation is superior to other options for the resolution of the

controversy. The relief sought for each Class member is small, as little as $10 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

114. Questions of law and fact common to the Class predominate over any questions affecting only individual members.

## CAUSES OF ACTION

### First Cause of Action

### Unfair Competition Law, Unlawful Prong

### Bus. & Prof. Code § 17200 et seq.

(On behalf of Borquez, Falcon, the Class, and the California Subclass)

115. In this and every cause of action, Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

116. The acts, omissions, misrepresentations, practices, and nondisclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the California False Advertising Law and the California Consumer Legal Remedies Act, as alleged herein.

117. Olly leveraged its deception to induce Plaintiffs and members of the Class to purchase products that were of lesser value and quality than advertised.

118. The fraudulent marketing of Kids Sleep described herein constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

119. Had Plaintiffs known that Kids Sleep was not safe and effective and offered for sale in violation of California and federal regulations, they would not have purchased it.

120. Plaintiffs suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase Kids Sleep over competing products, which are safe, effective, legal, less expensive, and do not make misleading or false drug claims on their packaging.

121. Defendant's unlawful acts allowed it to sell more units of Kids Sleep than it would have otherwise, at a higher price and a higher margin.

122. Had Plaintiffs been aware of Defendant's false and misleading advertising tactics, they would not have purchased Kids Sleep, and had Defendant not advertised Kids Sleep in a fraudulent manner, Plaintiffs would have paid less for it.

123. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices, requiring Defendant to commence a corrective advertising campaign, and awarding the Class restitution of all monies Defendant obtained from the sale of Kids Sleep. Plaintiffs have no adequate remedy at law.

## Second Cause of Action

### Unfair Competition Law, Fraudulent Prong

### Bus. & Prof. Code § 17200 et seq.

(On behalf of Borquez, Falcon, the Class, and the California Subclass)

124. Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

125. The acts, omissions, misrepresentations, practices, and nondisclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiffs, the Class, and the general public.

126. Defendant leveraged its deception to induce Plaintiffs and members of the Class to purchase products that were of lesser value and quality than advertised.

127. Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase Kids Sleep over competing products, which are safe, legal, less expensive, and do not make misleading or false drug claims on their packaging and websites.

128. Had Plaintiffs been aware of Defendant's false and misleading advertising

tactics, they would not have purchased Kids Sleep, and had Defendant not advertised it in a fraudulent manner, Plaintiffs would have paid less for it.

129. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the Class restitution of all monies Defendant obtained from the sale of Kids Sleep. Plaintiffs have no adequate remedy at law.

**Third Cause of Action**

**Unfair Competition Law, Unfair Prong**

**Bus. & Prof. Code § 17200 et seq.**

(On behalf of Borquez, Falcon, the Class, and the California Subclass)

130. The acts, omissions, misrepresentations, practices, and nondisclosures of Defendant as alleged herein constitute "unfair" business acts and practices because Defendant's conduct:

- immoral, unethical, unscrupulous, and offends public policy;
- the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and
- the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

131. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the Class restitution of all monies Defendant obtained from the sale of Kids Sleep. Plaintiffs have no adequate remedy at law.

**Fourth Cause of Action**

**False Advertising Law**

**Cal. Bus. & Prof. Code § 17500 et seq.**

(On behalf of Borquez, Falcon, the Class, and the California Subclass)

132. In violation of Cal. Bus. & Prof. Code § 17500 et seq., the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Kids Sleep without the knowledge that the product makes misleading and unapproved claims.

133. Defendant knew and reasonably should have known that the claims made on Kids Sleep's label, packaging, and website were untrue and misleading.

134. As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

135. Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; awarding Plaintiffs and the Class restitution of all monies from the sale of Kids Sleep in an amount of $5 million or a greater amount to be proven at trial, actual and punitive damages, and interest to Plaintiffs, an incentive award to Plaintiffs in conjunction with a class award or injunction, and for attorneys' fees and costs to be awarded by the Court in accordance with applicable law, including the Private Attorney General Statute.

## <u>Fifth Cause of Action</u>

## Consumer Legal Remedies Act

## Civil Code § 1750 et seq.

(On behalf of Borquez, Falcon, the Class, and the California Subclass)

136. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

137. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of Kids Sleep for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- **Civil Code § 1770(a)(5),** representing that goods have characteristics, uses, or benefits which they do not have;
- **Civil Code § 1770(a)(7),** representing that goods are of a particular standard, quality, or grade if they are of another;
- **Civil Code § 1770(a)(9)**, advertising goods with intent not to sell them as advertised; and
- **Civil Code § 1770(a)(16),** representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

138. As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

139. As a further result, Plaintiffs and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and contrary to public policy, they are entitled to punitive or exemplary damages.

140. Pursuant to section 1782 *et seq*. of the CLRA, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to Kids Sleep and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

141. Defendant received Plaintiffs' written notice.

**<u>Sixth Cause of Action</u>**

**Arizona Consumer Fraud Act**

**A.R.S. § 44-1521 et seq.**

(On behalf of Gardner and the Arizona Subclass)

142. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

143. Plaintiff Randi Gardner brings this claim on behalf of herself and the Arizona Subclass.

144. Plaintiff Gardner and Subclass members are "persons" within the meaning of the Arizona Consumer Fraud Act.

145. Kids Sleep constitutes "merchandise" under A.R.S. § 44-1521.

146. Defendant's marketing, solicitation, communications, and transaction materials constitute "advertisements" within the meaning of the Act.

147. In connection with the sale or advertisement of merchandise, Defendant used deception, deceptive or unfair acts or practices, false promises, misrepresentations, and/or concealment, suppression, or omission of material facts.

148. Specifically, Defendant represented that Kids Sleep safely and effectively treated sleeplessness and insomnia in children and could promote healthy sleep cycles.

149. Those representations were false or misleading because Kids Sleep is not safe for children, is not recommended by pediatricians, and is an unapproved drug.

150. Defendant also concealed or omitted that Kids Sleep is not safe for children.

151. Defendant intended that consumers rely on the omission and proceed with the transaction without knowing the concealed fact.

152. Defendant's representations and omissions were material because they concerned the safety and quality of Kids Sleep.

153. Plaintiff Gardner was exposed to and relied on Defendant's deceptive representation or omission when she purchased Kids Sleep.

154. Plaintiff's reliance was actual and caused her either to pay money she otherwise would not have paid or to pay more than she otherwise would have paid.

155. Subclass members were subjected to Defendant's materially uniform representations and course of conduct and suffered the same form of economic injury.

156. Defendant's conduct directly and proximately caused Plaintiff and Subclass members actual damages.

157. Defendant's conduct was knowing, deliberate, and undertaken despite notice that its representations were false or misleading.

158. Plaintiff Gardner and Subclass members are entitled to recover actual damages and all other relief permitted by Arizona law.

159. Plaintiff Gardner also seeks punitive damages to the extent the evidence

establishes the requisite aggravated, malicious, fraudulent, or consciously wrongful state of mind.

**<u>Seventh Cause of Action</u>**

**Wis. Stat. § 100.18**

**(On behalf of Hinestrosa and the Wisconsin Subclass)**

160. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

161. Plaintiff Alicia Hinestrosa brings this claim on behalf of herself and the Wisconsin Subclass.

162. Section 100.18 of the Wisconsin Statutes ("Section 100.18") prohibits a company from making false, deceptive, or misleading advertisements to the public that are designed to sell the company's products. The statute states in pertinent part that:

> [N]o person, firm, corporation or association, . . . with intent to sell, distribute, increase the consumption of or in any wise dispose of any . . . merchandise . . . or anything offered by such person, firm, corporation or association, . . . directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise, . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise, . . . or to the terms or conditions thereof, which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1).

163. Defendant, with intent to sell, distribute, increase the consumption of, or in any wise dispose of merchandise, services, or other things offered to the public, made, published, disseminated, circulated, or placed before the public assertions, representations, or statements of fact concerning Kids Sleep.

164. Defendant's representations were untrue, deceptive, or misleading within the

meaning of Wis. Stat. § 100.18(1).

165. Defendant's representations were material to a reasonable consumer's purchasing decision.

166. In promoting Kids Sleep with deceptive and unlawful safety and efficacy claims, Defendant engaged in a multifaceted advertising campaign directed to Ms. Hinestrosa and other members of the Wisconsin Subclass through Kids Sleep product labels, Defendant's website, Amazon pages, and other marketing materials, all of which Defendant controlled. Through that campaign, Defendant touted Kids Sleep as a safe and effective treatment for sleeplessness and insomnia in children.

167. Defendant's advertising and marketing materials originated at Defendant's headquarters in California and were then disseminated to consumers throughout the United States, including in Wisconsin to Hinestrosa and the Wisconsin Subclass.

168. Further, Kids Sleep is offered for sale in retail stores such as Walmart throughout Wisconsin.

169. Defendant's safety representations were false, as Kids Sleep is not safe for children.

170. Defendant had actual and/or constructive knowledge that Kids Sleep was not safe for children, but nonetheless chose to market Kids Sleep with deceptive and unlawful claims.

171. Accordingly, Hinestrosa and members of the Wisconsin Subclass have been exposed to Defendant's ongoing, deceptive advertising campaign and thus suffered monetary loss redressable under Section 100.18.

172. Neither Hinestrosa nor members of the Wisconsin Subclass would have purchased Kids Sleep had they known that the product was not safe for children and offered for sale in violation of federal regulations and Wisconsin law.

173. Kids Sleep had a value of $0 because it is illegal and unsafe.

174. Defendant violated Section 100.18 by disseminating to the public—including Hinestrosa and members of the Wisconsin Subclass—false, deceptive, and misleading

advertising materials about Kids Sleep's purported safety and efficacy.

175. Hinestrosa and the Wisconsin Subclass reasonably relied on Defendant's representations as a material inducement to enter the transactions at issue.

176. Accordingly, Hinestrosa and the Wisconsin Subclass have suffered monetary damages.

177. Pursuant to Wis. Stat. § 100.18(11)(b)(2), Hinestrosa and the Wisconsin Subclass are entitled to recover such pecuniary loss, together with costs, including reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendant as follows:

a) An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiffs Christina Borquez, Trish Falcon, Randi Gardner, and Alicia Hinestrosa as Class representatives and appointing their undersigned counsel as Class counsel, and requiring Defendant to bear the cost of class notice;

b) An order requiring Defendant to pay $1,000 in restitution, damages, punitive damages, and interest to each Plaintiff;

c) An order requiring Defendant to pay $5 million or a greater amount to be proven at trial in restitution, damages, and punitive damages to Class members, and $15,000 to each Plaintiff as an incentive award, or such greater amount the Court deems fair and reasonable;

d) An order requiring Defendant to disgorge any benefits it received from Plaintiffs and any unjust enrichment it realized as a result of its improper and misleading advertising, marketing, sale, and distribution of Kids Sleep;

e) An order declaring that the conduct complained of herein violates the Unfair Competition Law;

f) An order requiring Defendant to cease and desist its deceptive, unconscionable,

fraudulent, and unlawful practices;

g) An order requiring Defendant to engage in a corrective advertising campaign;

h) A temporary and permanent injunction prohibiting the conduct described in the Complaint;

i) An award of prejudgment and postjudgment interest;

j) An award of attorneys' fees and costs of $500,000, or such greater amount the Court awards as fair and reasonable; and

k) Such other and further relief as this Court may deem just, equitable, or proper.

**NO JURY DEMAND**

Plaintiffs do not demand a jury trial.

DATED: August 7, 2026

Respectfully Submitted,

s/Gregory S. Weston
Gregory S. Weston

**Counsel for Plaintiffs**